UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| KAREN HORN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 4:15CV1474 PLC |
| | ) |
| CAROLYN W. COLVIN, | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM & ORDER**

Karen Horn ("Plaintiff") seeks review of the Social Security Administration's ("SSA") decision denying her application for Disability Insurance Benefits beginning January 27, 2007.[1] The Court has reviewed the parties' briefs and the entire administrative record, including the hearing transcript and the medical evidence. For the reasons set forth below, the case is reversed and remanded.

I.   *Background and Procedural History*

In February 2013, Plaintiff filed an application for Disability Insurance Benefits pursuant to Title II of the Social Security Act, 42 U.S.C. §§ 401 et seq. (Tr. 138-41). Plaintiff alleged that she was disabled as of January 27, 2007, as a result of: Type II diabetes; hypertension; hyperlipidemia; gout; seizures; left bundle branch block, angina, pacemaker; diabetic neuropathy; hypothyroidism; depression; urinary frequency; and dizziness, balance issues, and memory loss. (Tr. 174). The SSA denied Plaintiff's claims, and she filed a timely request for a hearing before an administrative law judge ("ALJ"). (Tr. 73-77, 84-85).

---

[1] The parties consented to the exercise of authority by the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). (ECF No. 9).

1

The SSA granted Plaintiff's request for review, and an ALJ conducted a hearing on May 2, 2014. (Tr. 86-87, 32-60). In a decision dated May 28, 2014, the ALJ applied the five-step evaluation process set forth in 20 C.F.R. § 404.1520[2] and found that Plaintiff did not engage in substantial gainful activity during the period from her alleged onset date of January 27, 2007 through December 31, 2012, her date last insured. (Tr. 17-25). The ALJ determined that Plaintiff had the severe impairments of diabetes with neuropathy and heart disease, status post-pacemaker placement, and the following non-severe impairments: hypertension, obesity and hyperlipidemia, hypothyroidism, carpal tunnel syndrome, left hip degenerative joint disease, sleep apnea, seizures, sciatica, dysuria, and depression. (Tr. 19-20).

After reviewing Plaintiff's testimony and medical records, the ALJ found that, through Plaintiff's date last insured, she had the residual functional capacity (RFC) to "perform sedentary work as defined in 20 CFR 404.1567(a) where the claimant lifted or carried 10 pounds occasionally and five pounds frequently, stood or walked for two of eight hours during the workday, and occasionally climbed stairs." (Tr. 22). Finally, the ALJ held that, through the date last insured, Plaintiff retained the ability to perform past relevant work as a collector and was therefore "not under a disability, as defined in the Social Security Act, at any time from January 27, 2007, the alleged onset date, through December 31, 2012, the dated last insured[.]" (Tr. 24-25).

Plaintiff filed a request for review of the ALJ's decision with the SSA Appeals Council, which denied review on July 22, 2015. (Tr.1-4, 13). Plaintiff has exhausted all administrative

---

[2] To determine whether a claimant is disabled, the Commissioner engages in a five-step evaluation process. See 20 C.F.R. §§ 404.1520. Those steps require a claimant to show that he or she: (1) is not engaged in substantial gainful activity; (2) has a severe impairment or combination of impairments which significantly limits his or her physical or mental ability to do basic work activities or (3) has an impairment which meets or exceeds one of the impairments listed in 20 C.F.R., Subpart P, Appendix 1; (4) is unable to return to his or her past relevant work; and (5) the impairments prevent him or her from doing any other work. Id.

2

remedies, and the ALJ's decision stands as the SSA's final decision. Sims v. Apfel, 530 U.S. 103, 106-07 (2000).

## II. *Standard of Review*

A court must affirm an ALJ's decision if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence 'is less than a preponderance, but enough so that a reasonable mind might find it adequate to support the conclusion.'" Cruze v. Chater, 85 F.3d 1320, 1323 (8th Cir. 1996) (quoting Boerst v. Shalala, 2 F.3d 249, 250 (8th Cir. 1993)). In determining whether the evidence is substantial, a court considers evidence that both supports and detracts from the Commissioner's decision. Pate-Fires v. Astrue, 564 F.3d 935, 942 (8th Cir. 2009). However, a court "do[es] not reweigh the evidence presented to the ALJ and [it] defer[s] to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are supported by good reason and substantial evidence." Renstrue v. Astrue, 680 F.3d 1057, 1064 (8th Cir. 2012) (quoting Gonzales v. Barnhart, 465 F.3d 890, 894 (8th Cir. 2006)).

"If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision." Partee v. Astrue, 638 F.3d 860, 863 (8th Cir. 2011) (quoting Goff v. Barnhart, 421 F.3d 785, 789 (8th Cir. 2005)). The Eighth Circuit has repeatedly held that a court should "defer heavily to the findings and conclusions" of the Social Security Administration. Hurd v. Astrue, 621 F.3d 734, 738 (8th Cir. 2010); Howard v. Massanari, 255 F.3d 577, 581 (8th Cir. 2001).

## III. *Discussion*

Plaintiff claims substantial evidence does not support the ALJ's RFC determination because the ALJ erred in: (1) finding that Plaintiff's sleep apnea was a non-severe impairment; and (2) relying on the opinion of a non-doctor, single decision-maker. (ECF No. 12). The Commissioner counters that: (1) Plaintiff failed to demonstrate that her sleep apnea was a severe impairment; and (2) substantial evidence supported the RFC determination. (ECF No. 23).

*A. Sleep apnea*

Plaintiff first argues that the ALJ erred at step two of the sequential evaluation when he failed to designate Plaintiff's sleep apnea a severe impairment. In particular, Plaintiff asserts that the ALJ improperly based his determination on one doctor's note reporting improvement and overlooked numerous later reports of continued fatigue. In response, the Commissioner argues that the ALJ properly determined that Plaintiff's sleep apnea was non-severe and accounted for fatigue in the RFC.

At step two of the evaluation process, the ALJ must determine if a claimant suffers from a severe impairment. Kirby v. Astrue, 500 F.3d 705, 707 (8th Cir. 2007). See also 404 C.F.R. § 404.1520(c). A severe impairment is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities."[3] 20 C.F.R. § 404.1521(a). An impairment is non-severe when it amounts only to a "slight abnormality" that would have "no more than minimal effect on an claimant's ability to work." Kirby, 500 F.3d at 707. Although the Plaintiff has "the burden of showing a severe impairment that significantly limited her physical or mental ability to perform basic work activities[,]…the burden of a claimant at this stage of the analysis is not great." Caviness v. Massanari, 250 F.3d 603, 605 (8th Cir. 2001). See also Kirby, 500 F.3d at

---

[3] Basic work activities include, among other things, physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, and handling, as well as various mental and physical activities. 20 C.F.R. § 416.921(b).

708 ("Severity is not an onerous requirement for the claimant to meet, but it is also not a toothless standard.")

At the hearing, Plaintiff testified that about her sleep apnea and fatigue. (Tr. 38-41). She explained that, on a typical day, after waking up to an alarm and "maybe get[ting] through some dishes[,]….I try to stay up and I just can't. I feel drained." (Tr. 38). Plaintiff will later "force myself to get up and eat my lunch, and then try to do something else. . . . And then I usually lay down until my sister gets home." (Tr. 47). Plaintiff explained that she had used a continuous positive airway pressure (CPAP) machine for sleep, but discontinued its use "[b]ecause of the frequency that I get up to go to the bathroom each and every night….I was constantly have [sic] to unhook it, so it couldn't work effectively." (Tr. 41). Plaintiff stated that, as a result of fatigue, she lies down "every couple of hours. Probably at least six, seven hours a day, if not more." (Tr. 39). If she does not lie down, "I just pass out. I mean, I just can't hold my head up." (Id.).

Plaintiff's medical records reflect that she first complained of fatigue to her cardiologist, Dr. Jerome Dwyer, on January 9, 2012. (Tr. 497-98). Plaintiff also reported fatigue to her primary care physician, Dr. Benjamin Voss, during an appointment on June 8, 2012. (Tr. 469-75). Plaintiff described the problem as "moderate" and "worsening" and reported that she "urinates every hour in [the] middle of [the] night" and "feels exhausted by 1p[m] every day[.]" (Tr. 469). Dr. Voss ordered a sleep study and recommended Plaintiff "cut down on liquids at night to help w/nocturia." (Tr. 473). At the time, Plaintiff was taking Lyrica. (Id.).

In July 2012, Dr. Oscar Schwartz, a pulmonologist, performed a sleep study, diagnosed Plaintiff with "very severe sleep apnea," and prescribed a CPAP machine. (Tr. 433-34). On September 25, 2012, Plaintiff saw Dr. Voss, and he noted that her fatigue "improved since starting CPAP." (Tr. 462). However, when Plaintiff returned to Dr. Schwartz's office on

5

October 17, 2012, she reported that her condition was "chronic and unchanged." (Tr. 413-18). Dr. Schwartz observed that she appeared fatigued and increased her dosage of Lyrica. (Id.). Plaintiff visited Dr. Schwartz again on November 21, 2012 and complained of sinus congestion, short sleep time, and continued fatigue. (Tr. 406-12). Dr. Schwartz noted: "The frequency of episodes is increasing and nightly and if really bad unable to use the [CPAP] device." (Tr. 406).

On January 25, 2013, approximately one month after Plaintiff's date last insured, she went to the emergency room because she had been experiencing "[c]hest pain with exertion for several days."[4] (Tr. 517). The hospital records stated Plaintiff was "negative" for "fever, chills, malaise/fatigue and diaphoresis." (Tr. 519-23). However, at a follow-up appointment with Dr. Voss on January 29, 2013, Plaintiff stated that she was experiencing fatigue, along with chest pain, dizziness, and dyspnea. (Tr. 455-61). Plaintiff returned to Dr. Voss's office on February 19, 2013 because, among other reasons, she "was still feeling fatigued." (Tr. 449-54). Likewise, on April 25, 2013, Plaintiff informed the single decision-maker from the Disability Determinations Services that "there has been no change in her fatigue levels since using the CPAP." Tr. 64).

In his decision, the ALJ noted that Plaintiff had a history of snoring and fatigue and that a July 2012 sleep apnea study revealed that she suffered severe sleep apnea requiring CPAP treatment. (Tr. 19). However, the ALJ found that Plaintiff's sleep apnea was a non-severe impairment because, "by September 2012, the claimant reported that her fatigue improved with using the C-PAP." (Id.). Significantly, the ALJ did not reference Dr. Schwartz's records of

---

[4] "When an individual is no longer insured for Title II disability purposes, [the Court] will only consider [his] medical condition as of the date [he] was last insured." Davidson v. Astrue, 501 F.3d 987, 989 (8th Cir. 2007) (quoting Long v. Chater, 108 F.3d 185, 187 (8th Cir. 1997)). However, "[e]vidence from outside the insured period can be used in 'helping to elucidate a medical condition during the time for which benefits might be rewarded.'" Cox v. Barnhart, 471 F.3d 902, 907 (8th Cir. 2006) (quoting Pyland v. Apfel, 149 F.3d 873, 876 (8th Cir. 1998)).

October and November 2012 or Dr. Voss's records of January and February 2013, which reflected that Plaintiff's sleep apnea persisted after introduction of the CPAP.

In this case, the evidence in the record demonstrates that Plaintiff's sleep apnea and resulting fatigue constituted more than a "slight abnormality" or "minimal limitation on her ability to perform basic work activities." Kirby, 500 F.3d at 707. Plaintiff consistently complained to her pulmonologist of sleep apnea and fatigue, and she testified extensively about her need for frequent, lengthy naps. (Tr. 39). After Plaintiff received the diagnosis of severe sleep apnea and began using the CPAP device, she reported some improvement to her primary care physician, Dr. Voss, in September 2012. However, she subsequently informed Dr. Voss and Dr. Schwartz, her pulmonologist, that she continued to suffer short sleep time and fatigue from October 2012 through February 2013. The ALJ does not explain his decision to credit only the September 2012 report of improvement.

While the Court recognizes that an ALJ "is not required to discuss every piece of evidence submitted," Black v. Apfel, 143 F.3d 383, 386 (8th Cir. 1998), the ALJ's failure to discuss the significant post-September 2012 evidence renders the Court unable to determine whether the ALJ considered it and discounted it or simply failed to consider it. Because the ALJ did not explain his decision to rely entirely upon Dr. Voss's single note from September 2012, his conclusion that Plaintiff's sleep apnea had improved and was therefore non-severe appears to be based on an incomplete review of the record.

The Commissioner contends that, even if the ALJ erred in finding that Plaintiff's sleep apnea was a non-severe impairment, such error was harmless because the ALJ included in the RFC a limitation to occasional stair climbing "due to fatigue." (Tr. 22 n.1). A court may find that an error at step two in failing to find a particular impairment severe does not require reversal

where the ALJ finds other severe impairments and considers all of the claimant's impairments, severe and non-severe, in his subsequent analysis. Cuthrell v. Astrue, 702 F.3d 1114, 1118 (8th Cir. 2013).

Here, the ALJ purported to accommodate Plaintiff's fatigue in the RFC by limiting her to occasional stair climbing. However, Plaintiff's medical records and testimony reflect that, unlike her chest pain and shortness of breath which were induced by exertion, her fatigue was constant and chronic. Because this single, physical limitation to occasional stair climbing does not appear to address Plaintiff's functional limitations resulting from sleep apnea, the ALJ's failure to include sleep apnea at step two was not harmless error.[5] See e.g., Booth v. Colvin, Case No. 4:15CV410 NKL, 2016 WL 632621, at *8 (W.D.Mo. Feb. 17, 2016).

Based on the record as a whole, the Court finds that the ALJ did not properly evaluate the severity of Plaintiff's sleep apnea. There is substantial evidence in the record as a whole to conclude that Plaintiff's sleep apnea presented more than a slight abnormality that significantly limited basic work activity. See Brown v. Bowen, 827 F.2d 311, 312 (8th Cir. 1987).

  B. *Some Medical Evidence*

Plaintiff argues that the substantial evidence in the record does not support the ALJ's RFC assessment because: (1) the ALJ relied upon the opinion of a single decision-maker from Disability Determinations Services; and (2) there was no other evidence in the record addressing Plaintiff's functional limitations. (ECF No. 12 at 12). The Commissioner counters that: (1) the

---

[5] The Commissioner also argues that Plaintiff's failure to list sleep apnea in her disability report suggests that the impairment was non-severe. As a general rule, "an ALJ has 'no obligation to investigate a claim not presented at the time of the application for benefits and not offered at the hearing as a basis for disability[.]'" Battles v. Shalala, 36 F.3d 43, 45 n.2 (8th Cir. 1994) (quoting Brockman v. Sullivan, 987 F.2d 1344, 1348 (8th Cir. 1993)). The Court notes that, although Plaintiff did not include sleep apnea among her medical conditions, she wrote: "due to some of my medications and conditions, I find myself often fatigued, unable to sit or stand for long periods of time. Frequent chest pains and problems concentrating and short-term memory problems." (Tr. 184).

ALJ properly recognized that the single decision-maker was not an acceptable medical source and conducted his own review of the record; and (2) "some medical evidence" supports the ALJ's RFC finding. (ECF No. 23 at 12, 15).

Although the ALJ bears the primary responsibility for assessing a claimant's residual functional capacity based on all relevant evidence, "a claimant's residual functional capacity is a medical question." Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001) (quoting Singh v. Apfel, 222 F.3d 448, 451 (8th Cir. 2000)). See also Hutsell v. Massanari, 259 F.3d 707, 712 (8th Cir. 2001). "Because a claimant's RFC is a medical question, an ALJ's assessment of it must be supported by some medical evidence of the claimant's ability to function in the workplace." Hensley v. Colvin, 829 F.3d 926, 932 (8th Cir. 2016). See also Hutsell, 259 F.3d at 704. "An administrative law judge may not draw upon his own inferences from medical reports." Nevland v. Apfel, 204 F.3d 853, 858 (8th Cir. 2000).

"Single decision-makers are disability examiners authorized to adjudicate cases without mandatory concurrence by a physician." Shackleford v. Astrue, Case No. 4:10CV2175 AGF, 2012 WL 918864, *3 n.5 (E.D. Mo. March 19, 2012) (citing Social Security Advisory Board, Disability Decision Making: Data and Materials, May 2006, pp. 4, 104 n. 7. at http://www.ssab.gov/documents/chartbook.pdf). Because a single decision-maker is not an acceptable medical source, any record that he or she produces cannot constitute substantial evidence. 20 C.F.R. § 404.906(b)(2). See also Benton v. Colvin, Case No. 2:14CV92 NCC, 2016 WL 1161582, at *12 (E.D. Mo. March 23, 2016).

Here, the ALJ cited two opinions relating to Plaintiff's physical impairments. First, the ALJ noted that the single decision-maker "found that the claimant could perform sedentary work." (Tr. 23). The ALJ continued: "While her findings are consistent with the record, [the

9

single decision-maker] is not an acceptable medical source, and her findings are therefore granted little weight." (Id.). Next, the ALJ noted that Dr. Alex Mamen completed temporary and permanent disability placards for Plaintiff, but assigned this opinion "no weight" because they were completed after Plaintiff's date last insured, in "checked box form," and "contradicted by the record." (Id.). No other examining or consulting physician expressed an opinion regarding Plaintiff's physical ability to function in the workplace.

Upon review of the record, it appears the ALJ based the RFC either upon the single decision-maker's opinion or upon the ALJ's own inferences from medical reports, neither of which constitutes medical evidence. See Nevland, 204 F.3d at 858; Dace v. Colvin, Case No. 4:12CV47 TIA, 2014 WL 1228894, at *22 (E.D. Mo. March 25, 2014). Because "some medical evidence" in the record did not inform and support the ALJ's RFC assessment, the Court remands for reconsideration of this issue.

### IV. *Conclusion*

For the reasons set forth above, the court finds that the Commissioner's decision was not supported by substantial evidence. Accordingly,

**IT IS HEREBY ORDERED** that, pursuant to 42 U.S.C. § 405(g), the decision of the Commissioner is **REVERSED**, and this cause is **REMANDED** to the Commissioner for further proceedings consistent with this opinion.

An order of remand shall accompany this memorandum and order.

*/s/ Patricia L. Cohen*
PATRICIA L. COHEN
UNITED STATES MAGISTRATE JUDGE

Dated this 13th day of December, 2016